**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**ADVOCACY TRUST, LLC as Special Administrator and Personal Representative of the Estate of DANIEL GARCIA, JR.** **PLAINTIFF**

**V.** **CASE NO. 5:25-CV-05198**

**FEDERAL EXPRESS CORPORATION and JOHN DOE MAINTENANCE COMPANY** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Federal Express Corporation's ("FedEx") Motion for Summary Judgment (Doc. 50).[1] For the reasons stated below, the Motion is **GRANTED**.

## I. BACKGROUND

This case arises out of a fatal single-vehicle box van accident. On June 9, 2023, Daniel Garcia, Jr., was driving a 2008 Freightliner MT45 box van in Benton County, Arkansas. (Doc. 52, ¶ 2). Mr. Garcia was attempting to make a right-hand turn when the van overturned, landed on Mr. Garcia, and killed him. *Id.* ¶ 4; Doc. 50, ¶ 1. The post-accident Driver/Vehicle Examination Report identified defects with the box truck's braking system and stated that there was no evidence to suggest that the damage was crash related. (Doc. 54-5, p. 1). Plaintiff Advocacy Trust, LLC ("Advocacy Trust"), a limited liability company that was appointed the Special Administrator and Personal Representative of Mr. Garcia, asserts that the crash was the result of the brake system defects. *See* Doc. 1-7, ¶¶ 38–43. FedEx does not concede as such in its Motion. However,

[1] The Court has also reviewed the parties' briefs, statements of fact, and exhibits. (Docs. 51–52, 54–56).

as outlined below, this dispute of this fact is immaterial and does not preclude awarding summary judgment.

At the time of the accident, Mr. Garcia was an employee of Scout Logistics, Inc. ("SCL"), which owned the vehicle but had leased it to FedEx. (Doc. 52, ¶¶ 1, 3; Doc. 54, p. 1). Following the accident, SCL or its workers' compensation carrier paid a claim for workers' compensation benefits made on behalf of Mr. Garcia. *Id.* ¶ 6. No workers' compensation claim was made to FedEx, nor did FedEx or its workers' compensation pay such benefits. *Id.* ¶7.

On June 9, 2025, Advocacy Trust sued FedEx and an unidentified maintenance company ("John Doe Maintenance Company") in Pennsylvania state court on wrongful death and survivorship claims based on the defendants' negligence; the Complaint also lists a separate claim against FedEx for "negligence, carelessness, and/or recklessness . . . in the hiring, supervision, retention and selection of John Doe Maintenance Company." (Doc. 1-7, ¶¶ 72–88; 92–99). The case was removed to the Eastern District of Pennsylvania and ultimately transferred to the Western District of Arkansas on September 26, 2025. *See* Docs. 1, 20.

## II. LEGAL STANDARD

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Subpart (a) to Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, the Court "must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts." *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997).

For there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factfinder can reasonably reach a conclusion if that conclusion is based on sufficient probative evidence and not on mere speculation, conjecture, or fantasy." *Singleton v. Ark. Hous. Authorities Prop. & Cas. Self-Insured Fund, Inc.*, 934 F.3d 830, 835 (8th Cir. 2019) (internal quotations omitted).

## III. DISCUSSION[2]

FedEx argues that summary judgment is appropriate because the evidence supports its consistent stance throughout litigation: Advocacy Trust cannot succeed on an employee-employer based negligence claim because Mr. Garcia was not FedEx's employee, nor was Mr. Garcia an "agent, servant, [and/or] workman" of the company. (Doc. 51, p. 3). And even if Mr. Garcia was its employee, FedEx argues it is shielded from any tort liability because of the exclusive-remedy provision of the Arkansas Workers'

[2] FedEx and Advocacy Trust appear to only address Count III, Negligent/Recklessness, in the Motion and briefs. They do not address Count V's negligent/reckless hiring, supervision, retention, and/or selection claim. Given that Advocacy Trust identifies no evidence that would support such a claim against FedEx—perhaps because maintenance duties were relegated to SCL, as discussed below—the Court also finds that summary judgment in favor of FedEx is appropriate for Count V.

Compensation Act. (Doc. 51 at p. 5); *see* Ark. Code Ann. § 11-9-105(a) ("The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer . . . ."). FedEx further argues that Advocacy Trust has developed no evidence establishing that FedEx owed any legal duty to Mr. Garcia nor evidence that FedEx proximately caused his death. *Id.* at pp. 2–5.

In its Response, Advocacy Trust does not dispute Mr. Garcia's employment with SCL and SCL's ownership of the box van; nor does it argue that FedEx formally employed Mr. Garcia. *See* Doc. 54, p. 1. Rather, Advocacy Trust asserts that the evidence establishes the requisite duty and causation to hold FedEx liable for Mr. Garcia's death.

"To prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Hope Med. Park Hosp. v. Varner*, 2019 Ark. App. 82, at 5 (2019) (citing *Duran v. Sw. Ark. Elec. Coop. Corp.*, 2018 Ark. 33, at 6 (2018)). "Duty arises out of the recognition that the relation between individuals may impose upon one a legal obligation for the benefit of another." *Id.* "The question of whether a duty is owed is always a question of law and never one of fact for the jury." *Id.*

Advocacy Trust turns to the Federal Motor Carrier Safety Regulations ("FMCSR") to support its argument that FedEx owed a duty of care to Mr. Garcia. Under 49 C.F.R. § 376.12(c)(1), a motor carrier lessee, like FedEx here, "shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the

operation of the equipment for the duration of the lease."

FedEx leased the box van from SCL pursuant to an Independent Service Provider Agreement ("ISP Agreement"). (Doc. 54, pp. 3–5; Doc. 55, p. 42). The ISP Agreement incorporates § 376.12(c)(1), stating that FedEx "will assume complete responsibility of the operation of the Equipment for the duration of this Agreement . . . as required by 49 CFR Part 376." (Doc. 55, p. 15). Therefore, Advocacy Trust argues that "FedEx's own documents show that this vehicle was leased to FedEx thus creating a duty owed to all individuals, including decedent." (Doc. 54, p. 6).[3]

The Court agrees with FedEx that Advocacy Trust's sole reliance on § 376.12(c)(1), and its reference in the ISP Agreement, is "misplaced" as the regulation alone is not enough to establish that FedEx owed a duty to Mr. Garcia.

To the extent that Advocacy Trust may assert that incorporation of § 376.12(c)(1) in the ISP Agreement establishes a special employee-employer relationship between FedEx and SCL—and by extension between FedEx and SCL's drivers like Mr. Garcia—§ 376.12(c)(4) states that "[n]othing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee." The Arkansas Supreme Court held that, considering the language in section (c)(4), section (c)(1) does not automatically make a driver the "statutory employee" of the carrier-lessee; rather,

[3] In its Response, Advocacy Trust also identifies a "vendor ID badge" that FedEx provided to Mr. Garcia "to use while he was making deliveries." (Doc. 54, pp. 5–6). While the badge includes Mr. Garcia's name, his photo, and the FedEx logo, the badge also clearly states that "[t]he holder of this badge is a VENDOR to FedEx Ground. The holder is ***not an employee*** of FedEx Ground." *Id.* at p. 6 (emphasis added). Advocacy Trust provides no argument as to how the Court should consider Mr. Garcia's badge, and the Court fails to understand how it supports Advocacy Trust's duty argument.

state law principles control. *Kistner v. Cupples*, 2010 Ark. 416, at *5 (2010). But in any event, the Arkansas Workers' Compensation Act's exclusive-remedy provision (the applicability of which Advocacy Trust neither directly addresses nor challenges) appears to foreclose tort liability against Mr. Garcia's employer.

And while the Arkansas Supreme Court seems to have only considered the impact (or lack thereof) of § 376.12(c)(1) on determining whether parties are in an employer-employee relationship, Advocacy Trust fails to point to any authority indicating that the regulation imposes distinct legal duties on lessees like FedEx that go beyond what state tort law already requires. FedEx cites some nonbinding authority to support otherwise. *See Bays v. Summitt Trucking, LLC*, 691 F. Supp. 2d 725, 730 (W.D. Ky. 2010) (citing Lease and Interchange of Vehicles (Identification Devices), 3 I.C.C.2d 92, 93 (1986) ("The Commission did not intend that its leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist.")).

Consideration of whether a duty exists thus requires parsing out the actual relationship between FedEx and Mr. Garcia, as well as FedEx's actual relationship with the box truck and its maintenance. *See Chew v. Amer. Greetings Corp.*, 754 F.3d 632, 636 (8th Cir. 2014) ("The characteristics of the parties and the circumstances of their encounter may trigger a unique duty that imposes a distinct standard of care that departs from the typical standard of ordinary care.").

SCL, not FedEx, was Mr. Garcia's employer. And in entering into the ISP Agreement, the relationship between SCL and FedEx could be best understood as one between an employer (FedEx) and an independent contractor (SCL) that retained its own

employees. Therefore, though FedEx does not advance argument to this effect in its briefings, it appears that a more proper inquiry is what level of care, if any, FedEx owed to an *employee* of an independent contractor.

Under Arkansas law, "[t]he general rule is that an employer does not have a duty to provide a reasonably safe work environment for the employees of its independent contractor." *Powell v. WestRock CP, LLC*, 2024 WL 3073717, *5 (W.D. Ark. 2024) (citing *Duran*, 2018 Ark. at 10). That said, at common law, employers owe a duty to an independent contractor's employees akin to the that of the duty of premises owners to business invitees: "This is a duty to exercise ordinary care and to warn in the event there are any unusually hazardous conditions existing which might affect the welfare of the employees." *Gordon v. Matson*, 246 Ark. 533, 536 (1969).

However, there is a further wrinkle in the relationship between FedEx and SCL that puts into question whether even that limited duty would apply to FedEx regarding the conditions of the box van: FedEx did not own the box truck. Therefore, this case diverges from the common scenario where employees of an independent contractor enter onto property that an employer owns and/or controls and an accident occurs.

A thorough review of the ISP Agreement also weighs against finding that FedEx assumed any affirmative duty to maintain and inspect the leased box trucks. Section 8.5 of the ISP Agreement outlines the parties' duties regarding "Equipment Maintenance and Inspection."[4] Per section 8.5(a), SCL "agrees, at SCL's expense, to have the Equipment maintained and inspected in accordance with the standards specified in 49 CFR Parts

[4] Section 8.1 of the ISP Agreement defines "Equipment" as the box trucks for lease identified in Schedule B, which includes the box truck that Mr. Garcia was driving.

393 and 396." (Doc. 55). Section 8.5(b) then outlines SCL's agreement to provide FedEx "with documentation of timely maintenance and inspection of the Equipment in accordance with the systematic and periodic mandatory vehicle maintenance and inspection regulations required by Applicable Law, including but not limited to 49 CFR Part 396." *Id.*§ 8.5(B). And if any of SCL's equipment fails to abide by safety regulations, SCL agrees to "remove the Equipment from service to [FedEx] until the Equipment is brought into compliance." *Id.* § 8.5(C). In Schedule B – Leased Equipment, the parties reaffirm SCL's maintenance responsibilities to comply with the FMCSR, namely that SCL will "complete and provide records to [FedEx] systematic vehicle-specific maintenance intervals based on either the Original Equipment Manufacturer ('OEM') recommendation or a designated systematic maintenance interval determined by SCL." *Id.* at p. 42. In other words, while FedEx assumed responsibility for the *operation* of the leased box vans, the ISP Agreement evidences that vehicle owner SCL, not FedEx, was responsible for the *maintenance*.

Advocacy Trust thus ultimately fails to establish that FedEx, based on its relationship with SCL and its employees, owed a duty to Mr. Garcia. Awarding summary judgment for FedEx is therefore proper. But even if the nonexistence of duty did not already vitiate FedEx's potential liability, Advocacy Trust also fails to identify evidence that any action or inaction by FedEx proximately caused Mr. Garcia's fatal accident.

"Proximate cause is defined as that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury, and without which the result would not have occurred." *Old Dominion Freight Line, Inc. v. McMillion*, 2026 Ark. 169, at 6 (2026) (citing *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, at 7–8 (2012)). "For

an injury to be the natural and probable consequence of an act, the consequence of the act might and ought to have been foreseen by the defendant as likely to flow from that act and the act must, in a natural and continuous sequence unbroken by any new cause, operate as the cause of injury." *Ben M. Hogan & Co. v. Krug*, 234 Ark. 280, 285 (1961). "Although proximate causation is usually a question of fact for a jury, where reasonable minds cannot differ, a question of law is presented for determination by the court." *Davis v. Schneider Nat., Inc.*, 2013 Ark. App. 737, at 8 (2013). "When a party cannot present proof on an essential element of his claim, the moving party is entitled to summary judgment as a matter of law." *Id.*

Advocacy Trust again points to the ISP Agreement's provision incorporating § 376.12(c)(1)'s terms and as well as the requirement for SCL to provide FedEx with maintenance and inspection records pursuant to the FMCSR. (Doc. 54, p. 7; Doc. 55, p. 42). On the theory that the box van's brakes system was defective and thus caused Mr. Garcia's accident, Advocacy Trust asserts that "FedEx has failed to provide any maintenance records in this case whatsoever to show that they were compliant with the FMCSR and with their own ISP agreement," and therefore "a genuine issue of material facts exists as to whether FedEx knew or should have known that the box truck leased to them was in violation of the FMCSR" or otherwise unsafe when Mr. Garcia operated it. (Doc. 54, p. 7).

There are many inferential, unsubstantiated leaps the Court must make to accept Advocacy Trust's argument and deny summary judgment. Though it presents several alleged actions and inactions in the Complaint, *see* Doc. 1-7, ¶ 87, Advocacy Trust only identifies on summary judgment one potential "inaction" by FedEx that could be deemed

both negligent and a proximate cause of the accident: that FedEx did not receive and/or keep SCL's maintenance and inspection records for the box truck. Whether FedEx failed to keep such records requires some speculation given that there is no other evidence corroborating this assertion. And whether a pre-existing brake system issue caused the crash also requires some speculating. But even if both contentions are accepted as true, FedEx's alleged inaction regarding recordkeeping is rather attenuated in the supposed chain of events that would have led to Mr. Garcia's crash—especially given that SCL assumed responsibility as vehicle owner to not only ensure that its trucks' maintenance but also remove its trucks from service to FedEx until they were brought into compliance.

## IV. CONCLUSION

The Court acknowledges the accident that killed Mr. Garcia on June 9, 2023, was certainly a tragedy. However, Advocacy Trust fails to establish the essential elements of negligence that would allow liability to attach to FedEx regarding the tragic event. **IT IS THEREFORE ORDERED** that FedEx's Motion for Summary Judgment (Doc. 50) is **GRANTED**. The Complaint is **DISMISSED WITH PREJUDICE**.[5] A judgment will enter separately.

**IT IS SO ORDERED** on this 17th day of November, 2026.

________________________________
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE

[5] The Complaint names "John Doe Maintenance Company" as a defendant in several counts. However, Advocacy Trust never moved to substitute and serve any maintenance company and has still failed to identify any named defendant throughout the summary judgment stage. Therefore, all claims against John Doe Maintenance Company are also dismissed. *See Christianson v. McLean Cnty.*, 176 F.4th 1076, 1086 (8th Cir. 2026) ("[D]ismissal of John Doe defendants at the summary judgment stage is appropriate where the plaintiff did not identify or serve them.").